*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. BOWMAN, Minor.

UNPUBLISHED
June 15, 2026
1:34 PM

No. 378243
Van Buren Circuit Court
Family Division
LC No. 25-020203-NA

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order authorizing the petition to remove the minor child, MB, from respondent's care. We affirm.

## I. UNDERLYING FACTS

Respondent is MB's mother, and at the time of this order, MB's father was not a respondent and did not live with respondent. Instead, respondent lived with her boyfriend, Ethan Sehy. In August 2025, respondent noticed that MB had various injuries after arriving home from daycare. After taking MB to the hospital, it was determined that the injuries were "non-accidental." Respondent indicated that MB had been injured at his daycare, so Children's Protective Services (CPS) initially investigated MB's daycare; however, CPS ultimately ruled out the daycare as the source of MB's injuries. Instead, after further investigation, CPS determined that Sehy was the likely cause of MB's injuries. CPS then worked with respondent to create a safety plan that ensured that Sehy was not alone with MB. However, respondent failed to comply with this safety plan, and Sehy was seen picking up MB from daycare on several occasions.

The Department of Health and Human Services (DHHS) petitioned to remove Sehy from respondent's home. That same day, the trial court ordered, ex parte, that Sehy be removed from respondent's home. After the order was entered, two CPS workers spoke with respondent on the phone and informed her about the court order requiring that Sehy be removed from her home. Respondent indicated that she understood the order, but that she would not comply with the court order.

-1-

Two days later, CPS found Sehy at respondent's home in violation of the court order. The next day, a preliminary hearing was held on the petition to remove MB from respondent's care. The petition detailed MB's injuries, the determination that Sehy was the cause of MB's injuries, respondent's failure to comply with the safety plan, and respondent's failure to comply with the court order. After taking testimony, the trial court authorized the petition, emphasizing that respondent left MB in the care of his alleged abuser despite the court order, which presented a substantial risk to the child's life, physical health, or mental well-being. The trial court then released MB to his nonrespondent father.

## II. LEGAL ANALYSIS

Respondent argues that the trial court erred in three ways when it authorized the petition removing MB from her care.

We review "de novo questions of law, including the interpretation and application of our court rules." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 445; 861 NW2d 303 (2014). A trial court's factual findings are reviewed for clear error. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A clearly erroneous decision must be more than maybe or probably wrong, *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999), and we must be "left with a definite and firm conviction that a mistake has been made," *In re Benavides*, 334 Mich App at 167 (quotation marks and citation omitted). Further, we give regard to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). See *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The Juvenile Code, MCL 712A.1 *et seq*., and MCR 3.900 *et seq*., set forth the procedures that the state must follow to "exercise its *parens patriae* authority over minors." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). Child protective proceedings are initiated when the state provides the trial court with a petition "containing facts that constitute an offense against the child under the juvenile code (i.e., MCL 712A.2(b))." *Id*. at 405. When a trial court receives a petition requesting that a child be placed out of the home, a preliminary hearing must be conducted. *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). At the preliminary hearing, the trial court makes two decisions: (1) whether to authorize the filing of the petition, and if so (2) where to place, or release, the child. *In re Benavides*, 334 Mich App at 167. See also MCR 3.965(B).

First, a trial court may authorize a petition "upon a showing of probable cause, unless waived, that one or more of the allegations in the petition are true and fall within MCL 712A.2(b)." MCR 3.965(B)(12). With respect to this petition, the trial court determined that the allegations in the petition fell within MCL 712A.2(b)(1), which provides for circumstances where a juvenile's:

> [P]arent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

Once a trial court authorizes the petition, the next step is to determine where to place the child. See MCR 3.965(B)(13). See also *In re Benavides*, 334 Mich App at 167. Here, as noted, MB was released to his father pursuant to MCR 3.965(B)(13)(a).

On appeal, respondent advances several arguments that allege that MB was improperly removed from her care.[1] We address each in turn.

As discussed earlier, the trial court authorized the petition because respondent left MB in the care of his alleged abuser, contrary to court order, which presented a substantial risk to the child's life, physical health, or mental well-being. Respondent argues that she never *saw* the order requiring that Sehy be removed from the home, so she could not be faulted for failing to comply with the order. This argument is meritless.

First, respondent provides no case, court rule, or statute that indicates that she was required to have a physical copy of the removal order before she had to comply with it. Second, the record indicates that respondent had actual notice of the order the day it was signed, as she was explicitly informed of the order by two different people—two days before she was seen violating the order. Indeed, two different CPS workers verbally informed respondent about the order, and explained who the order applied to, and that the order came from the court. The record provides no indication that respondent was unaware of or did not understand the order; instead, it indicates that respondent refused to comply with the order from the moment that she was informed of it. Further, respondent does not contest the petition allegation that she "violated the safety plan with regards to Mr. Sehy only having supervised visitation as he has been observed picking [MB] up from daycare alone on multiple occasions." This allegation also demonstrates that respondent left MB in the care of his alleged abuser on multiple occasions despite recommendations otherwise.

Respondent also argues that the trial court failed to make any specific findings of fact that she committed any misconduct. Specifically, respondent notes that the trial court only justified removal because respondent did not comply with the order to remove Sehy. But respondent's refusal to both comply with the order to remove Sehy from her home and with CPS's safety plan regarding Sehy not being alone with MB, is misconduct that she committed. CPS investigations revealed that Sehy likely abused MB; therefore, to protect MB, CPS attempted to work with respondent to ensure that MB was not left alone with his alleged abuser. Then, after respondent was seen failing to comply with this safety plan, CPS sought a court order to ensure that MB was safe from his alleged abuser while at home; but respondent continued to refuse to take any of the recommended steps to protect MB from his alleged abuser.

Lastly, respondent argues that the trial court failed to find that the DHHS engaged in reasonable efforts pursuant to MCR 3.965(C)(4). However, pursuant to MCR 3.965(C)(4), although there was no obligation to make any determinations regarding reasonable efforts because MB was released to his father, the record indicates that the trial court did make specific

---

[1] Respondent advances a few other arguments; however, these arguments are only brief assertions that contain no support via evidence or caselaw. Therefore, we decline to address these arguments because they have not been adequately briefed and, therefore, have been abandoned. See *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016).

determinations regarding reasonable efforts, concluding that the following reasonable efforts were made: "CPS investigation, MIC investigation, law enforcement investigation, family led safety planning, medical examinations, CAC interview, polygraph of respondent caregiver." Respondent provides no argument as to how or why these reasonable efforts were not adequate.

Accordingly, the trial court did not clearly err when it authorized the petition and removed MB from respondent's care.

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel